# THE MARGARET BALLIET

# PERSONAL INJURY SPECIAL NEEDS TRUST

## AND

# SUBORDINATED MEDICARE SET ASIDE ARRANGEMENT

ESTABLISHED AS OF

_____, 2010

AND FUNDED

UNDER 42 U.S.C. § 1396p(d)(4)(A)

IN CONNECTION WITH THE ACTION OF THE

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

AMARILLO DIVISION

CIVIL ACTION NO. 2:09-CV-136-J

# THE MARGARET BALLIET PERSONAL INJURY SPECIAL NEEDS TRUST AND

## SUBORDINATED MEDICARE SET ASIDE ARRANGEMENT

THIS TRUST AGREEMENT is established solely for the benefit of **Margaret Balliet** (hereinafter "Margaret"), an incapacitated adult residing in Jefferson County, Alabama, by **Michael Balliet, Sr., as Grantor** (hereinafter sometimes referred to as "Grantor"), and **Michael Balliet, Sr., Michael Balliet, Jr., and The Trust Company of Sterne Agee, Inc.,** a corporate trustee having trust powers in the State of Alabama, **as Trustee** (hereinafter collectively referred to as "Trustee"), as of this _____ day of _____ 2010. Reference in this Trust Agreement to the Trustee shall be deemed a reference to whoever is serving as Trustee, whether original, alternate or successor.

## I. NAME AND PURPOSE OF THE TRUST

A.    **Name.**    This Trust shall be known as **THE MARGARET BALLIET PERSONAL INJURY SPECIAL NEEDS TRUST AND SUBORDINATED MEDICARE SET ASIDE ARRANGEMENT.**

B.    **Authority for Creation of Trust.**  Grantor, who is the father of Margaret, has established this Trust for the sole benefit of Margaret pursuant to the authority of 42 U.S.C. § 1396p(d)(4)(A), which provides that a trust containing assets available to a beneficiary will not disqualify the beneficiary from certain public benefits if it is:

> A trust containing the assets of an individual under age 65 who is disabled (as defined in section 1614(a)(3)) and which is established for the benefit of such individual by a parent, grandparent, legal guardian of the individual, or a court if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this title.

All provisions of this Trust shall be interpreted to qualify this Trust under this provision of federal law. Any provision of this Trust which may prevent this Trust from satisfying full compliance with 42 U.S.C. § 1396p(d)(4)(A) shall be null and void.

C.    **Administration of the Trust for Margaret's Benefit.**  Margaret is severely and permanently "disabled" as defined in 42 U.S.C. §1382c(a)(3), which is §1614(a)(3) of the Social Security Act. The intent of this Trust is to benefit Margaret, **whose birthday is November 29, 1967,** providing for her extra and supplemental items over and above benefits that Margaret may otherwise be entitled to receive from any governmental or private programs, including private health care coverage, as a result of her disabilities. The additional purpose in establishing this Trust is to provide for a system for fund handling, fiscal management, investment and disbursement, personal attendant services, advocacy, social development services, rehabilitation, health care management, and guidance for Margaret. The severity of Margaret's multiple disabilities will likely cause her to require continuing support, assistance, and supervision for the remainder of her life. All decisions regarding distributions from this Trust shall be

supervision for the remainder of her life. All decisions regarding distributions from this Trust shall be made at the sole and absolute discretion of the Trustee and in the best interests of Margaret. This Trust shall not be construed as a support trust and is established as a purely discretionary trust. All actions of the Trustee shall be directed toward carrying out the intentions expressed in this paragraph. Margaret shall not be considered to have access to principal or income of this Trust or the right to demand any payment from this Trust.

D. **Importance of Carrying Out Grantor's Purpose; Supplemental Care**. Current public benefit programs for persons with disability conditions do not provide benefit coverage for their basic living needs, such as complete dental care, unlimited personal nursing care and outdoor recreation. It is vitally important that Margaret have access to any and all available care during her lifetime in order to maintain a level of human dignity and humane care. If this Trust were to be invaded by creditors, subjected to any liens or encumbrances, or for any reason cause public benefits for which Margaret is otherwise entitled, or to which she may become entitled, to be terminated, it is likely that the Trust Estate would be depleted prior to Margaret's death, especially since the cost of care for a person with a disability condition (not including any emergency needs) is high.

E. **Assurances of this Trust for the Beneficiary**. This Trust is hereby established to receive any and all net settlement proceeds awarded to Margaret in Civil Action No. 2:09-CV-136-J in the United States District Court for the Northern District of Texas, Amarillo Division (hereinafter the "Personal Injury Lawsuit"). The Court, Margaret's legal representatives, and the Guardian *ad litem* appointed for Margaret in the Lawsuit have found that distribution of her Lawsuit recovery proceeds to this Trust, with its discretionary and spendthrift provisions, serves to enhance the quality of Margaret's life and is in Margaret's best interest. This Trust is created to assure that there shall always be a friend, advocate and protector of the legal rights of Margaret and to insure that Margaret shall receive services that will assist in Margaret's obtaining the highest possible degree of happiness and self-achievement.

F. **Statement Regarding Medicare Set Aside Arrangement**. It is acknowledged that Medicare coverage may apply in the future for certain health care expenses for Margaret, which care is related to the claim underlying Margaret's Personal Injury Lawsuit, such that a Medicare Set Aside Arrangement is necessary, and which Medicare Set Aside Arrangement is established herein.

G. **Income Tax Status of Trust**. Pursuant to Sections 671, 673, 674, 675, 676 and 677 of the Internal Revenue Code of 1986 and Revenue Ruling 83-25, Margaret shall be regarded as the owner of this Trust. For income tax purposes there shall be included in computing Margaret's taxable income, deduction and credits all of the items of income, deduction and credits against tax attributable to this Trust; however, such attribution to Margaret for the technical requirements of federal income tax purposes does not in any way diminish or affect in any way the irrevocability of this Trust, or mean that assets of this Trust are available to Margaret, for purposes of Medicaid or similar benefit programs for persons with disabilities.

## II. THE TRUST ESTATE

A. The Grantor has established and funded this Trust with $5.00, as reflected on Exhibit "A" hereto, and other good and valuable consideration. Pursuant to the Order of the United States District Court for the Northern District of Texas, Amarillo Division, entered on _____, 2010, in the Personal Injury Lawsuit, all net proceeds awarded to Margaret as a result of the Lawsuit, after payment of liens, attorneys' fees and other outstanding debts of Margaret, shall be directly and irrevocably

paid to the corporate Trustee serving hereunder. Such sums, together with any further additions directed to this Trust, including any structured settlement annuity payments directed to the Medicare Set Aside Arrangement established herein, or other sums awarded on Margaret's behalf, any other additions that are acceptable to the Trustee, and any income or accruals received on the principal, shall be herein collectively referred to as the "Trust Estate," and shall be held, managed, invested, reinvested, and distributed as herein set forth; provided, however, that no additional funds may be made to this Trust on or after the date that Margaret reaches the age of sixty-five (65) years, except as may continue to be paid under an irrevocable assignment of a structured settlement annuity that was entered into before Margaret attains sixty-five (65) years of age.

B.      As soon as practicable after receipt by the Trustee of the portion of the Trust Estate that consists of the initial lump-sum portion of the net proceeds from the settlement of the Personal Injury Lawsuit, the Trustee shall hold and segregate from such settlement funds a sum of $57,607.00, which shall be held and administered as a Medicare Set Aside Arrangement under the terms hereinafter stated in the Article entitled "Medicare Set-Aside Arrangement."

1.      The amount segregated, together with income thereon and any structured annuity payments that are payable to the Medicare Set Aside Arrangement, is referred to herein as the "Medicare Set Aside Share" of the Trust Estate.

2.      The remainder of such settlement proceeds, and all other property assigned, transferred or otherwise acceptable to the Trustee and contributed to the Trust by Margaret or any other source, including property from another self-settled special needs trust, is referred to herein as the "Special Needs Share" of the Trust Estate.

3.      The division of the Medicare Set-Aside Arrangement and the Special Needs Share shall be set forth on Exhibit "B" attached hereto.

### III. DISTRIBUTIONS FROM THE TRUST ESTATE

A.      **Income and Principal**.  The Trustee has the continuing, absolute and discretionary power to deal with the funds of this Trust, with the unfettered ability to expend funds on Margaret's behalf as the Trustee deems appropriate and necessary, including her special needs. No person dealing with the Trustee shall be required to inquire into the propriety of the Trustee's actions.

1.      The Trustee is granted the sole discretion to accumulate the net income or to pay so much of the net income or principal of this Trust as it deems appropriate for Margaret's benefit, including her special needs.

2.      Upon funding with assets having a value of One Thousand Dollars ($1,000.00) or more, the Trustee is requested (but is not required), on an annual or more frequent basis, to consult with an attorney with appropriate expertise in the area of public benefits and trust law to review state and federal legislation, regulations, and other requirements to ensure that Margaret's public benefits eligibility is not inadvertently jeopardized by inappropriate actions or distributions by the Trustee. The cost of such attorney consultations may be paid by the Trustee from the Trust Estate.

B.      **Beneficiary**.  This Trust shall be solely for the benefit of Margaret during her lifetime, and the rights of the remainder beneficiaries shall be of secondary importance.

1.     The Trustee shall not be required to distribute income currently.  The Trustee shall not be held accountable to any beneficiary if part or all of the principal shall be depleted as a result of distributions under this Trust in accordance with the terms of this Trust.

2.     Any determination made by the Trustee in good faith as to the manner in which or the extent to which the powers granted by this Trust shall be exercised shall be binding and conclusive upon all persons who might then or thereafter have or claim any interest in the Trust Estate.

3.     The Trustee shall, with reasonable frequency, not less than every six (6) months, visit Margaret to inspect living conditions, evaluate her treatment and care by her providers, determine the appropriateness of her treatment and rehabilitation program and services, and to evaluate Margaret's morale and needs.  The Trustee may employ a care manager to assist in this regard, or may rely upon the reports of Margaret's legal guardian(s).

C.     ***Special Needs* Defined.**  As used in this Trust, the term *special needs*:

1.     Refers to the requisites for maintaining Margaret's comfort and happiness, and enabling her to fulfill goals of self-achievement, when, in the discretion of the Trustee, such requisites are not being provided by any public agency, office, or department of the State of Alabama, or of any other State in which she may reside, or of the United States or by any private agency.

2.     Shall include, by way of illustration, but not limitation, expenses for supplemental medical and dental expenses, annual independent check-ups, physical or psychological therapy (including in-patient or out-patient rehabilitation and occupational, speech, music, art, language, communication, behavioral, audiological and other forms of therapy), nutritional supplements, medical procedures that are desirable in the Trustee's discretion even though they may not be necessary or life saving, adaptive equipment (such as motorized wheelchairs, other personal transportation vehicles, handicapped equipped beds and other furniture), counseling, supplemental nursing care and rehabilitative services, training of Margaret's caregivers in connection with her health care needs, reasonable and appropriate compensation for and expenses of Margaret's caregivers, attendant care for Margaret, differentials in cost between shared and private rooms in institutional settings, training programs, legal services, clothing and personal care expenses, eye care and eye glasses, transportation (including drivers, vehicle purchase or lease and periodic replacement), vehicle maintenance, fuel and vehicle insurance), and other forms of insurance, such as premiums for health insurance on Margaret.

3.     Subject to any applicable regulations of appropriate state and federal agencies concerning special needs trusts, may include (a) electronic equipment to enhance Margaret's life, such as communication devices (including by voice activation), video equipment, computers, musical equipment, television sets, and cable service; (b) reasonable entertainment and recreational expenses, including travel, vacation and trips, and arrangement for holidays and vacation seasons with family members and friends; (c) expenditures relating to prepaid funeral and burial arrangements, advocacy on Margaret's behalf, the purchase of a residence or an interest in one for Margaret, expenses of Margaret's residence, technological support, an alarm system, furnishings, home improvements and modifications, including ramp and bathroom modifications, landscaping, and regular personal and household assistance for Margaret; (d) deductible and premium payment of amounts for Margaret on any insurance policies providing her with coverage; (e) satisfaction of Margaret's income tax obligations, and certain other legal obligations that the Trustee, in its sole discretion, deems appropriate; and (f) other items as in the Trustee's discretion enhance Margaret's potential and quality of life.

D.   **Distribution Guidelines**.  In making any distribution from the Trust Estate during Margaret's lifetime, the Trustee:

1.   Shall consider any other income or resource of Margaret known to the Trustee and which is reasonably available to or for Margaret;

2.   Shall take into consideration all entitlement benefits from any government agency, such as federal Social Security Disability Insurance (SSDI), food assistance, Medicare, Medicaid, welfare, Supplemental Security Income (SSI), and any other special purpose benefits, government or otherwise, for which Margaret is eligible;

3.   Shall consider resource and income limitations of any such assistance program for which she may be eligible, from time to time;

4.   May make expenditures so that Margaret's standard of living will be reasonably comfortable and enjoyable, as determined in the sole discretion of the Trustee;

5.   Shall not be obligated to or compelled to make any payments from this Trust;

6.   Shall not pay or reimburse any amounts to any government agency or department unless such repayment would not jeopardize Margaret's eligibility for government benefits;

7.   Shall not be liable for any loss of benefits;

8.   Shall consider recommendations of medical or other appropriate professionals as to expenditures to enhance Margaret's potential and quality of life; and

9.   Shall not be required to see to the application of any funds applied or paid, and the receipt of the payee shall be full acquittance of the Trustee. The decision of the Trustee as to direct payments or application of funds as above prescribed shall be conclusive and binding upon all parties in interest if made in good faith.

E.   **No Commingling**.  Notwithstanding any provision herein to the contrary, no public assistance benefits for Margaret or to which she is entitled shall at any time be added to or form a part of the Trust Estate.

F.   **Supplemental Only**.  No part of the Trust Estate shall be used to supplant or replace public assistance benefits of any county, state, federal, or other governmental agency, office or department which has a legal responsibility to serve persons with disabilities which are the same as or similar to Margaret's, subject to Article III.H.5 hereof.

1.   For purposes of determining Margaret's eligibility for public program benefits, no part of the principal or income of any share of the Trust Estate shall be considered available to Margaret.   If the Trustee is requested by any office, department or agency administering any benefits to release principal or income of the Trust Estate to or on behalf of Margaret to pay for equipment, medication, or services which any government benefit program is authorized to provide, or if the Trustee is requested by any department or agency administering any benefits to petition the court or any other administrative agency for the release of trust principal or income for this purpose, the Trustee is authorized to deny such request and is authorized to defend, at the expense of the Trust Estate, any contest or other attack of any nature of the provisions of this Trust.

2.      In addition, it shall be a proper, non-support use of the Trust Estate to employ such advocates, both legal and non-legal, as the Trustee may determine to be necessary in order to protect any and all rights of Margaret, and to take whatever administrative or judicial steps may be necessary to continue Margaret's eligibility for benefits, including the obtaining of instructions from a court of competent jurisdiction ruling that the Trust Estate is not available to Margaret for benefits program eligibility determination purposes.  Such advocates must be experienced and skilled in the areas for which their assistance is needed.  Any expenses of the Trustee in this regard, including reasonable attorney's fees, shall be a proper charge to the Trust Estate.

G.      **Spendthrift Provision**.  No interest in the principal or income of the Trust Estate, including the Medicare Set Aside share, shall be anticipated, assigned or encumbered, or shall be subject to any creditor's claim or legal process, prior to its actual receipt by or for the beneficiary hereof. Furthermore, because the Trust Estate is to be conserved and maintained for Margaret's needs throughout her lifetime, no part of the corpus hereof, neither principal nor undistributed income, shall be construed as part of Margaret's estate or be subject to the claims of voluntary or involuntary creditors for the provision of goods, care and services, including without limitation residential care, by any public entity, office, department or agency of the State of Alabama or any other state, or the United States.  It is Grantor's intention that any trust created hereunder shall be a spendthrift trust, as contemplated by Section 19-3B-502 of the Code of Alabama, as amended, and the spendthrift provisions contained in this paragraph shall constitute a material purpose of all trusts created hereunder.

H.      **Payments**.  The Trustee may make any payments for Margaret's benefit from the Trust Estate, in the Trustee's sole and absolute discretion, in any one or more of the following ways:

1.      By paying amounts to the legally appointed guardian, conservator, or other fiduciary of the person or estate of Margaret, if any, including a Trustee of any trust for Margaret's benefit, or to any person with whom Margaret resides that is providing care for her, but limited to amounts that will not disqualify Margaret from any governmental benefits.

2.      By paying amounts directly to any person or organization supplying either goods or services for Margaret or on Margaret's behalf.

3.      Subject to the further provisions of this Trust, by making expenditures directly on behalf of Margaret, including, without limitation,  the purchase of real or personal property for Margaret that qualifies as an exempt resource under applicable governmental programs from which Margaret  is receiving benefits.

4.      By purchasing items as assets of the Trust Estate to be used by Margaret or for her benefit.

5.      In the event of the occurrence of any event which is beyond the control of the Trustee and which temporarily or permanently disqualifies Margaret from those governmental benefits of the type contemplated by this Trust Agreement, or in the event of an emergency or any other condition which the Trustee reasonably believes threatens the life, safety or security of Margaret, or in the event of any material change or circumstance (for example, upon Margaret's securing full-time, competitive employment and/or a significant change in Margaret's status or in the laws or regulations affecting her), the Trustee may, in the exercise of its sole discretion, administer this Trust so as to alleviate the condition and address the change of circumstances. While Grantor's intent is to maximize total benefits available to Margaret from any public or private assistance programs for which she may be eligible, notwithstanding any provisions herein to the contrary, the Trustee may, from time to time, in its sole discretion, make

distributions the Trustee deems to be in Margaret's best interest in ways that may reduce or eliminate public benefits if it so deems advisable, after taking into account the effect of such distribution on continuing public benefits and Margaret's situation. In exercising the discretion granted under this Agreement, the Trustee shall always be guided by what is in Margaret's best interest. However, if Margaret is receiving or has applied for assistance where the mere existence of the Trustee's authority to make distributions pursuant to this paragraph results or would result in the loss of governmental benefits or assistance, regardless of whether sole authority is actually exercised, these provisions hereof will be null and void.

## IV.  MEDICARE SET ASIDE ARRANGEMENT

Any provisions to the contrary notwithstanding, during Margaret's lifetime, both the principal and the income from the Trust Estate composed of or derived from the Medicare Set Aside share shall remain segregated as a part of the Trust Estate and separately administered as a Medicare Set Aside Arrangement, and may be expended for Margaret's sole benefit in the absolute discretion of the Trustee, subject, however to the following provisions:

A.    **Payment of Certain Medical Expenses if and as Required for Medicare Benefits.** During the lifetime of Margaret, both the principal of and the income from the Medicare Set Aside Share shall be paid for medical services and supplies that would otherwise be reimbursable under Medicare, if but only if (1) such payments are necessary to entitle Margaret to Medicare coverage under the Medicare Secondary Payor Law; and (2) such payments shall be prudent in the discretion of the Trustee after considering all other benefits to which Margaret shall be entitled.  Such medical services and supplies are herein referred to as "eligible injury related medical expenses."

B.    **Engagement of Experts and Consultants.** The Trustee may engage the services of experts, including but not limited to a company that specializes in administering Medicare claims and payouts, including Medicare Set Aside Arrangements, to advise and counsel the Trustee with respect to eligible injury related medical expenses. The Trustee may rely upon the written instructions and advice of such experts regarding disposition of the Trust as to eligible injury related medical expenses. Payments and distributions from the Trust made in accordance with such instructions and advice of such experts shall be conclusively deemed authorized and proper.  The fees, costs and expenses of such experts and consultants, if any, shall be borne by the Trust Estate (but not the Medicare Set Aside Share, as set forth below), and such fees, costs and expenses shall not reduce or be paid from or as a part of the compensation due the Trustee as provided for herein below.

C.    **Administrative Fees, Costs and Expenses Related to Medicare Set Aside Share.** Administrative fees, costs and expenses related to the Medicare Set Aside Share shall not be paid from the Medicare Set Aside Share or its income.  Any such fees, costs and expenses associated with the maintenance, management and administration of the Medicare Set Aside Arrangement, including but not limited to charges for fiduciary services of the Trustee or any Medicare claims and payments administrator, shall be paid or reimbursed by the Trust, if at all, exclusively from the Special Needs Share.

D.    **Accounting for Medicare Set Aside Share.** The Trustee shall account to the United States Government's Center for Medicare and Medicaid Services (CMS), or successor agency, for the Medicare Set Aside Share annually within (30) days of the annual accounting period for the Medicare Set Aside Share, which period is marked by the anniversary date of the funding of the Medicare Set Aside Share. The fees, costs and expenses of such accounting shall be paid from the Special Needs Share and not otherwise.

E.   **No Compensation.**   No payment of compensation to Trustee may be made from the Medicare Set Aside Share.

F.   **Tax Attributable to Medicare Set Aside Share Payable From Such Share**. Taxes applicable to the income generated by the Medicare Set Aside Share shall be paid from such share to the extent permitted by the Medicare Secondary Payor Law, including but not limited to the July 11, 2005 Policy Memorandum issued by the Center for Medicare and Medicaid Services.

## V. TERMINATION

A.   **Termination of Trust.**   This Trust shall terminate upon the death of Margaret, unless sooner terminated by the exhaustion of corpus or as otherwise provided for herein.  Upon the termination of this Trust, to the extent allowed by federal and state law or regulations pertaining to this Trust, the Trustee may pay (or hold in reserve an amount of money for payment of) (i) any taxes due from the Trust to the state or federal government because of the death of Margaret and/or (ii) reasonable fees for the administration of the Trust Estate, such as for an accounting of the Trust to a court, completion and filing of documents, or other required action associated with termination and wrapping up of the Trust.  The decision as to the amount held in reserve shall be binding upon the remaindermen. Any amounts left after such payments shall be distributed as follows:

1.   **The Medicaid authorities of the State of Alabama (or any other state providing Medicaid assistance) shall be reimbursed for the total medical assistance provided to Margaret during her lifetime consistent with federal and state law.  To the extent more than one state has paid Medicaid assistance for Margaret, and sufficient funds do not exist in the Trust to completely satisfy all of such claims, each state shall receive a pro rata share of the amount remaining in the Trust based on the respective benefits paid by each such state on Margaret's behalf.  If the Special Needs Share of the Trust shall be insufficient for such reimbursement, then so much of the Medicare Set Aside Share as necessary shall be used to satisfy such claims, if any.**

2.   If the Trust terminates at Margaret's death and amounts remain in the Trust Estate after reimbursement to the Medicaid authorities pursuant to Paragraph A.1, the Trustee may then pay the funeral expenses of Margaret to the extent not covered by life insurance on her life or any other funds set aside for her funeral expenses, her expenses of last illness, and any remaining expenses which are or may be due upon or by reason of the death of Margaret.   Any amounts left after such payments shall be distributed to the remaindermen as listed in the remaining paragraphs of this Article V.

3.   Following payment of amounts pursuant to Paragraphs A.1 and A.2 of this Article V, all principal and accumulated income remaining, if any, shall be distributed as follows: Ten Dollars ($10.00) to Margaret's oldest niece or nephew who survives her.  The balance of said property shall pass to such person(s) to whom such property is appointed by Will executed by Margaret and duly admitted to probate, which Will must make specific reference hereto.  In the absence of such a Will, then such remaining assets shall be distributed to Margaret's brother, Michael Balliet, Jr., but if her said brother does not survive her, then to his lineal descendants who are living at Margaret's death, per stirpes, but if none, to such person or persons (other than Grantor) as would be entitled to inherit the property constituting said share, and in the proportions in which they would be entitled to inherit the same, from Margaret under the laws of Alabama then in force had she died at said time a resident of Alabama intestate and owned said property.  Notwithstanding any provision of any state law to the contrary, the Doctrine of Worthier Title shall not apply to the construction of the provisions of this Trust

4.    If any beneficiary pursuant to this Article V shall not at the time of Margaret's death have attained the age of Twenty-One (21) years, then, though the share of such beneficiary in said Trust Estate shall be deemed then to have vested in him or her, and shall be payable to his or her estate in the event of his or her death prior to attaining the age of Twenty-One (21) years, the Trustee, in its sole discretion, shall either:

(a)    Hold the share of each such beneficiary in trust for him or her until he or she shall attain the age of Twenty-One (21) years, at which time his or her share of said Trust Estate shall be transferred and paid over to him or her, free from this Trust. Prior to the date that any such beneficiary shall attain the age of Twenty-One (21) years, the Trustee shall use and apply, for his or her support, education and comfort, such part of the net income from his or her share of said Trust Estate and of the principal thereof as the Trustee deems necessary or desirable for said purposes. Any income not so applied shall be accumulated and added to the principal of his or her share of said Trust Estate at the end of each fiscal year of the Trust; or

(b)    Pay over said property to any custodial account heretofore established for the beneficiary, or if none exists, to a custodian designated by the Trustee from those persons, including the Trustee, who are eligible to serve as such custodian of the beneficiary under the Uniform Transfers (or Gifts) to Minors Act in effect in the state of the beneficiary's domicile for the use and benefit of the beneficiary.

B.    **Residue of Medicare Set Aside Share**.    Any provisions to the contrary notwithstanding, following the death of Margaret, the Medicare Set Aside Share shall continue to exist for a reasonable period determined in the sole discretion of the Trustee for the payment by the Trustee of expenses for medical care and prescription drugs provided to Margaret which are related to the claim underlying her Personal Injury Lawsuit and otherwise payable by Medicare, as determined by any company advising the Trustee regarding payment from the Medicare Set Aside Share. The Trustee shall have no liability to make any payment from the Medicare Set Aside Share as to any bill or account which has not been submitted in writing to the Trustee within ninety (90) days of the death of Margaret. To the extent of undistributed principal and income available in the Medicare Set Aside Share after reimbursement for Medicaid expenses as set forth above, the Trustee shall distribute the residue of the Medicare Set Aside Share to the individuals entitled thereto under paragraph A.3 hereinabove.

C.    **Mandatory Termination**.    Anything in this Trust Agreement to the contrary notwithstanding, no trust created under shall fail to vest in a trust beneficiary any later than the day preceding the date required by the rule against perpetuities applicable to this Trust Agreement, if any; and upon the expiration of such period, each trust then in existence which has not yet vested in a trust beneficiary shall then vest, in equal shares, in the current beneficiaries of such trust, and each beneficiary's share of the assets thereof shall be distributed to him or her at the termination of the trust or to the estate of such beneficiary if he or she dies before the termination of the trust.

## VI. OFFICE OF TRUSTEE

A.    **Successor Trustees**.

1.    If either Michael Balliet, Sr. or Michael Balliet, Jr., who are initially appointed to serve with the corporate Trustee as individual co-Trustees hereunder, shall die, resign, become disabled or incapacitated, or otherwise cease to serve as Trustee, then the other or survivor of them shall

serve as the individual Trustee hereunder, along with the corporate Trustee. If Michael Balliet, Sr. and Michael Balliet, Jr. are both deceased or unable or unwilling to serve as a Trustee, and no other successor individual Trustee has been appointed under any provision of this Trust Agreement and is then serving, then the corporate Trustee serving hereunder shall serve as sole Trustee.

2.      Notwithstanding any provision herein to the contrary, the individual Trustee serving hereunder shall have the right at any time while acting as Trustee hereunder to appoint any one or more qualified individuals, other than Margaret or any spouse of Margaret, to act as successor individual Trustee in his or her place and serve with the corporate Trustee then serving hereunder, such appointment to take effect upon the death, resignation or incapacity of the individual making such appointment. If two or more individuals are serving as co-Trustee hereunder, then any such appointment of successor individual Trustee(s) shall be made by mutual written agreement of all of such individuals so serving. Any such appointment may be revoked or changed prior to the appointment becoming effective. Any such appointment, revocation or change shall be by an acknowledged instrument delivered to all Trustees then serving and each such successor individual Trustee so appointed. Each successor individual Trustee appointed pursuant to the provisions of this paragraph shall accept such appointment by an acknowledged instrument.

3.      If The Trust Company of Sterne Agee, Inc., or any successor corporate Trustee serving hereunder, resigns or is unable to serve as Trustee, then Michael Balliet, Sr. and Michael Balliet, Jr. acting together, or the survivor of them acting alone, but if neither is then living, then Peggy Balliet, but if she is not then living, Margaret's conservator or guardian, if any, and if none, then Margaret's last attorney of record, shall nominate and appoint, in writing, any bank or trust company having, at the time of such resignation, total resources of not less than One Hundred Twenty-Five Million Dollars ($125,000,000.00), to serve as the successor to such corporate Trustee. Such nomination and appointment of a successor shall be made in writing, signed by the person(s) exercising such appointment, notarized, addressed and delivered to Margaret and her legal representative(s), if any, and to such successor so appointed and the Trustee then serving hereunder. If no such appointment and nomination is made and accepted by a successor within sixty (60) days of the corporate Trustee resigning or ceasing to serve, then any court having jurisdiction over this Trust or over Margaret shall appoint a successor Trustee hereunder. Any successor Trustee appointed pursuant to the provisions of this paragraph shall accept such appointment by an acknowledged instrument. The corporate Trustee shall continue to serve until the appointment of its successor has been accepted.

4.      Any substitute or successor Trustee acting hereunder shall have all of the rights, powers, duties, authority and responsibility confirmed upon each Trustee originally named herein.

5.      Notwithstanding any provision herein to the contrary, during Margaret's lifetime, but no more often than every two (2) years, Michael Balliet, Sr. and Michael Balliet, Jr. acting together, or the survivor or other of them acting alone, if one such other individual is deceased or unable to act, or if neither of them is living or able to act, then Peggy Balliet, but if she is not then living or able to act, then Margaret's conservator or guardian, and if none, then Margaret's last attorney of record, shall have the right, at any time during the continuation of any trust created hereunder, by an acknowledged writing, to remove any corporate Trustee serving hereunder and to substitute for such corporate Trustee any bank or trust company having, at the time of such substitution, total resources of not less than One Hundred Twenty-Five Million Dollars ($125,000,000.00). Such nomination and appointment of a successor shall be made in writing, signed by the person(s) exercising such appointment, notarized, addressed and delivered to Margaret and her legal representative(s), if any, and to such successor so appointed and the Trustee then serving hereunder. Any successor Trustee appointed pursuant to the

provisions of this paragraph shall accept such appointment by an acknowledged instrument. The corporate Trustee shall continue to serve until the appointment of its successor has been accepted.

6. Under no circumstances shall Margaret or any spouse of Margaret serve as Trustee hereunder.

B. **Resignation by Trustee.**

1. Any Trustee serving hereunder may resign by sending written Notice of Resignation setting forth the anticipated effective date thereof, either delivered personally or sent by registered mail at least sixty (60) days prior to the effective date to Margaret and to her legal representative, if any, and to each acting Trustee and any named successor Trustee, and if none, then to the court having jurisdiction over this Trust or Margaret. All costs incurred in any proceeding to appoint a qualified successor Trustee shall be paid for by the Trust. The Trustee shall continue to serve until the appointment of a successor has been accepted, however.

2. On or before the effective date of the resignation, the departing Trustee shall deliver to the successor Trustee and to those person(s) entitled to Notice of Resignation in the preceding paragraph, a statement of all receipts and disbursements of the Trust, together with an inventory of the assets belonging to the Trust. In addition, the resigning Trustee shall transfer physical possession of the assets of the Trust to its successor. Thereafter, the resigning Trustee shall be discharged of any further duties and obligations and may obtain approval by the court having jurisdiction over this Trust.

C. **Compensation of Corporate Trustee.** Any Corporate Trustee serving hereunder shall retain from the income (or principal) of the Trust Estate, as compensation for its services as Trustee, the fees and/or commissions stated in its regularly adopted schedule of compensation in effect and applicable at the time of performance of such services, unless otherwise specifically provided for in writing between the corporate Trustee and the individual Trustee(s) then serving, and if none, then Margaret's legal representative. If any corporate Trustee shall serve for a part of a calendar year, its annual compensation shall be prorated.

D. **Compensation of Individual Trustee.** Any individual Trustee serving hereunder may receive reasonable compensation from the income or principal of the Trust during each calendar year for such Trustee's services, as well as being entitled to reimbursement for his or her out-of-pocket expenses in serving as Trustee. If any individual Trustee shall serve for a part of a calendar year, his or her annual compensation shall be prorated.

E. **Waiver of Liability for Predecessor Trustee.** Any successor Trustee may accept as correct any accounting of trust assets made by any predecessor Trustee. However, the successor Trustee may, in the Trustee's absolute discretion, institute any action or proceeding for the settlement of the accounts, acts, or omissions of any predecessor Trustee.

F. **Trustee's Exemptions Regarding Bond, Inventorying and Reporting.** The Trustee, and any automatically succeeding or appointed Trustee at any time serving hereunder, need not give bond or other security, or file any inventory or any other report to any court regarding the performance of its duties hereunder unless required by order of such court having jurisdiction over this Trust.

## VII. PROVISIONS FOR MULTIPLE TRUSTEES

While two or more Trustees are acting, the following provisions shall apply where the context permits:

### A.    Multiple Trust Powers.

1.    With respect to any matter as to which the Trustees have joint authority, a Trustee from time to time may delegate any or all of that Trustee's rights, powers, duties and discretion as Trustee to the other Trustee(s), with the consent of the latter;

2.    The Trustee may establish bank accounts and may authorize that checks or drafts may be drawn on, or withdrawal made from, any such account on the individual signature of any one Trustee;

3.    A Trustee shall be presumed to have approved a proposed act or decision to refrain from acting if that Trustee fails to indicate approval or disapproval thereof within fifteen (15) days after a written request for approval;

4.    The Trustee may execute documents by jointly signing one document or separately signing concurrent counterpart documents; and

5.    The corporate Trustee serving hereunder shall keep the records of the Trust, facilitate and make all distributions from the Trust provided for herein, render statements of all Trust receipts and disbursements, and hold the assets, other than items held for Margaret's personal use, in safekeeping.

### B.    Trustee Voting Rights.
In the event two or more individual Trustees shall be serving with a corporate Trustee hereunder, then all of such individual Trustees shall together have one vote in the administration of the Trust. If more than two individuals are serving, then such vote shall be by majority decision among such individuals. The corporate Trustee serving hereunder shall also have one vote in the administration of the Trust.

## VIII.  POWERS OF TRUSTEE

The Trustee shall have the following powers, duties and discretions in addition to those otherwise granted herein or by law, except as elsewhere herein specifically restricted.

### A.    Discretion of Trustee.
Discretionary powers are exercisable in the discretion of the Trustee and no beneficiary of this Trust shall have any right or power to enforce or object to the reasonable exercise of such powers. Such discretion shall not be construed to mean that the Trustee may replace or supplant Margaret's government benefits.

### B.    Maintenance of Investments.
To hold any or all of the Trust Estate in the form of investment in which it is received.

### C.    Disposal of Trust Property.
To sell at public or private sale, to mortgage, pledge, or hypothecate, or exchange or lease (including lease for a period extending beyond the terms of this Trust) any stocks, notes, securities, real estate, minerals, and any other trust property upon such terms, cash or credit or both, as the Trustee may deem advisable.

D.    **Investments**.

1.    To invest and reinvest the Trust Estate, without limitation to trust investments, in investments of any kind, real or personal, including without limitation stocks, bonds, notes, mortgages, land, minerals, royalties, leaseholds, loans, savings accounts, certificates of deposit, mutual funds (including mutual funds advised by the Trustee for which the Trustee may receive an investment advisor's fee), cash management accounts, money market funds, participation in common trust fund(s), and participation in partnerships, joint ventures, and other business enterprises. The Trustee is specifically authorized to invest in commercial paper, certificates of deposit or savings accounts in the Trustee organization, any of its affiliates, or holding company.

2.    With respect to the Medicare Set Aside Share, the Trustee shall invest in an interest bearing account which is separate from any personal checking or savings account, and such account may be administered by a company selected by the Trustee who specializes in administering such Medicare Set Aside Arrangement accounts.

E.    **Real Property**.  To construct, repair, improve or demolish any improvements upon any real property held by the Trust.

F.    **Participation in Corporate Activities**.  To participate in any reorganization, consolidation, merger, or dissolution of any corporation, the stocks, bonds, or securities of which may be held at any time as part of the Trust Estate.

G.    **Title of Investments**.  To hold investments or any part of the Trust Estate in common or undivided interest with other persons.

H.    **Settlement of Claims**.  To demand, receive, provide receipt for, and collect any and all rights, money, properties, or claims to which this Trust may be entitled, and to compromise, settle, or abandon any claim in favor of or against this Trust.

I.    **Borrowing on behalf of Trust**.  To borrow funds for this Trust in such amounts and for such purposes as the Trustee may deem proper and to purchase property on the credit of this Trust and in connection therewith, or in connection with such borrowing, to execute and deliver promissory notes or other evidence of indebtedness of this Trust, and to mortgage or pledge all or any part of the Trust to secure payment of such indebtedness and to repay such indebtedness out of the Trust Estate. Any corporate Trustee, as Trustee, is specifically authorized to borrow money (from itself individually or from others) upon such terms and conditions as it may determine and to mortgage and pledge estate and trust assets as security for the repayment thereof.

J.    **Insurance**.  To carry, at the expense of this Trust, insurance of such kinds and in such amounts as the Trustee deems advisable to protect the Trust Estate against any damage or loss and to protect the Trustee against liability with respect to third parties.

K.    **Retention of Property**.  The Trustee may continue to hold any property or securities originally received by it as a part of the Trust Estate, so long as it shall consider the retention thereof for the best interests of the Trust Estate, and regardless of whether such property or securities are in law a proper investment of trust funds. In the disposition of any property constituting a part of the Trust Estate the Trustee may acquire other property without being limited or restricted to a class of investment which a Trustee may be permitted by statutes or the Constitution of any state in which the situs of the Trust is located, to make where such course is, in its opinion, for the best interest of said Trust Estate.

L.   **Determination of Principal/Income**.   The Trustee shall have power to determine whether any money or property coming into its hands shall be treated as a part of the principal of the Trust Estate or a part of the income therefrom, and to apportion between such principal and income any loss or expenditure in connection with the Trust Estate as to it may seem just and equitable.

M.   **Registration of Securities**.   The Trustee may, in its sole discretion, cause the securities which shall from time to time constitute the Trust Estate of any part thereof, to be registered in its name as Trustee hereunder, or in the name of a nominee, or hold same in safekeeping at the Federal Reserve Bank or another recognized bank or depository company, or to take and keep the same unregistered and retain them or any part thereof in such condition that they will pass by delivery, provided that any such registration in the name of a nominee shall neither increase nor decrease the liability of the Trustee.

N.   **Payment of Administrative Expenses**.   The Trustee shall pay from and out of the income of the Trust Estate, or the principal thereof if necessary, any and all expenses reasonably necessary for the administration of the Trust, including interest, taxes, and insurance.

O.   **Voting on Trust Investments**.   Any corporate Trustee ever serving hereunder is authorized to vote through its officers, employees or agents, in person or by general, limited or discretionary proxy, with respect to any investment that may be owned by the Trust, or consent for any purpose, in respect of any stocks or other securities constituting assets of the Trust; to exercise or sell any rights of subscription or other rights in respect thereof; and to take any other action it may deem prudent with regard to any reorganization, merger, consolidation, bankruptcy or other proceeding affecting any stock, bond, note or other security.

P.   **Trading of Securities**.   The Trustee is authorized to trade securities using any broker at the discretion of the Trustee, including brokerage offered by or through a corporate Trustee, notwithstanding the fact that a portion of the brokerage charge may inure to such corporate Trustee. As to cash awaiting permanent investment or distribution, or cash amounts not large enough to be efficiently invested otherwise, such corporate Trustee is also authorized to place such funds in income producing accounts of its own organization or to invest in such short-term fund or funds as it may select from among those short-term funds authorized for such use from time to time by such corporate Trustee.

Q.   **Statements**.   During Margaret's lifetime, the Trustee shall render periodic statements of all receipts and disbursements as mutually agreed to among the Trustee and the persons entitled to receive notice hereunder, as set forth in Paragraph X of this Item, but no less frequently than annually. A copy of any such statement shall be delivered to Margaret or her legal representative, and to such other person(s) receiving notice. The failure of any party receiving a statement to file a written objection to a statement with the Trustee within sixty (60) days after receipt shall be deemed to constitute an approval of said statement and its contents. Upon the death of Margaret, to the maximum extent allowable under Alabama law, the provisions of Section 19-3B-813 of the Code of Alabama, as amended, shall not be applicable to any trust created hereunder. Notwithstanding the foregoing, the Trustee shall promptly respond to the request of a qualified beneficiary, as defined in Section 19-3B-103(14) of the Code of Alabama, as amended, for information relating to trust administration pursuant to Section 19-3B-813(a)(2) of the Code of Alabama, as amended.

R.   **Accounting**.   The Trustee shall not be required to make, but shall, at its discretion, be entitled to have a judicial settlement of its accounts as Trustee. Any expenses attributable to

said proceeding shall be a charge against the Trust Estate. This provision shall be deemed an addition to any statutory or common law right of the Trustee to a judicial settlement of its accounts.

S.   **Trust Property**. Without limiting the generality of the foregoing or any other provision herein, to manage, control, operate, invest, reinvest, sell, exchange, lease, mortgage, encumber, or deal with the property of this Trust for and on behalf of the Trust and Margaret to the same extent and with the same powers that any individual would have in respect to his or her own property and funds.

T.   **Exercise of Power**. The Trustee may freely act under all or any of the powers given the Trustee by this Agreement in all matters concerning the Trust after exercising the Trustee's best judgment based upon all the circumstances of any particular situation as to the best course to follow in the interest of the Trust and Margaret without the necessity of obtaining the consent or approval of any court and notwithstanding that the Trustee may also be acting individually or as Trustee of other trusts or as agent for other persons or corporations interested in the same matters as a stockholder, director, or otherwise, provided that the Trustee shall exercise such powers at all times in a fiduciary capacity in the interest of Margaret.

U.   **Preparation of Tax Returns and Elections**. To prepare and file returns and arrange for payment with respect of all local, state, federal, and foreign taxes incident or applicable to this Agreement; to prepare all necessary fiduciary income tax returns; and to make all necessary and appropriate elections in connection therewith in its discretion.

V.   **Avoid Tax Liability**. To enter into agreements with any taxing agency, including but not limited to the Internal Revenue Service and any state taxing agency, in such a way so as to circumscribe the scope in which the administrate provisions of the Trust may be implemented to insure that the Trust shall not cause any unanticipated tax liability of any kind and to provide such taxing agency with any necessary disclaimer or agreements restricting the discretion of the Trustee in further transactions or any other matter which may be in the best interest of the Trust Estate and the beneficiaries of the Trust.

W.   **Division of Trust Estate for Distribution**. When the Trustee must divide any of the Trust Estate into parts or shares for the purpose of distribution, or otherwise, the Trustee may, in its reasonable discretion, make the division and distribution in identical interest, in kind, or partly in kind and partly in money, pro rata or non-pro rata. Also, the Trustee may make such sales of the property of the Trust Estate as the Trustee deems necessary to accommodate such distributions.

X.   **Notice to Beneficiary**. Any time when Margaret is entitled to receive a notice, the Trustee may give such notice, in the Trustee's discretion, to Margaret and/or to the legally appointed guardian or conservator of the person or estate of Margaret, if any, and if none, to any suitable person with whom Margaret resides or who cares for Margaret.

Y.   **Litigation**. To prosecute, defend, contest or otherwise litigate legal actions or other proceedings for the protection or benefit of a trust or the Trustee; to pay, compromise, release, adjust, or submit to arbitration any debt, claim or controversy; and to insure the Trust against any risk, and the Trustee against liability with respect to third persons.

Z.   **Seek Professional Assistance**. Grantor recognizes that no Trustee appointed hereunder is licensed or skilled in the field of social services. The Trustee may employ a care manager for Margaret, or seek the counsel and assistance of Margaret's advocate, guardian or conservator, if any, or that of any state and local agencies which have been established to assist person with disabilities and similar limitations. The Trustee may use the resources of the Trust Estate to aid Margaret's care manager,

advocate, guardian or conservator as appropriate, in identifying programs which may be of social, financial, developmental or other assistance to Margaret.   However, the Trustee shall not in any event be liable to Margaret, the remainderman of this Trust or any other party for any acts as Trustee hereunder so long as the Trustee acts reasonably and in good faith.   For example, the Trustee, as well as Margaret's advocate, guardian or conservator, shall not be liable for the failure to identify each and every program or resource which might be available to Margaret on account of Margaret's disabilities and limitations. Grantor further authorizes and empowers the Trustee to engage, employ and dismiss any agents, clerks, servants, consultants, attorneys-at-law, accountants, investment advisors, custodians or other persons in and about the performance of these presents as the Trustee shall think fit.

        AA.   **Unproductive Property.**   Retain unproductive property, as determined appropriate by the Trustee.

        BB.   **Amend Trust.**   The Trustee may, in the Trustee's sole and absolute discretion, amend this Trust to conform with subsequent changes in federal or state law or regulations established thereunder in order to better effect the purposes of the Trust.   The Trustee shall disclose any Trust amendment with the next annual accounting.

        CC.   **Situs of Trust.**   The situs of the Trust Estate shall be the State of Alabama, subject to the other provisions herein.   The Trustee, in its sole discretion, may transfer the situs of the Trust or any Trust property to any other jurisdiction as the Trustee deems advantageous, or where Margaret resides, and to appoint a foreign Trustee to act with respect to that property. The Trustee may delegate to the foreign Trustee any or all of the powers given to the Trustee; may elect to act as advisor to the foreign Trustee and shall receive reasonable compensation for so acting; and may at will, remove any acting foreign Trustee and appoint another, or re-appoint itself.

## IX. GENERAL ADMINISTRATIVE PROVISIONS

        A.   **Partial Invalidity**.   If any one or more of the provisions of this Trust Agreement are held to be invalid, illegal, or unenforceable in any respect, the Trustee will not be required to comply with that provision; the validity, legality, and enforceability of the remaining provisions hereof will not in any way be affected or impaired by that invalidity, illegality or unenforceability. The remaining provisions hereof, and the application of those provisions to persons or circumstances other than those as to which a provision is held invalid, illegal or unenforceable, will not be affected by the application, and each remaining provision hereof will be valid and enforced to the fullest extent permitted by law.

        B.   **Headings**.   Any headings in this Agreement are for convenience only and are not part of the text.

        C.   **Application to Court**.   If any disputes arise as to interpretation of this Trust, or there is need to obtain court approval of any accounting or any interpretation in regard to this Trust, the Grantor directs the Trustee to make application to the court having jurisdiction of this Trust or Margaret, it being the intent of the Grantor that no such Court shall assume continuing jurisdiction, except as may be required by law.

        D.   **Number and Gender**.   For purposes of this Trust Agreement, the masculine shall be deemed to include the feminine and the neuter, and the singular shall be deemed to include the plural, and the plural the singular, as the context may require.

E.   **Counterparts.**   This Trust Agreement may be executed in any number of counterparts and each shall constitute an original of one and the same Trust Agreement.

F.   **Statutes, Codes, and Regulations**.   Any references to specific statutes, codes, or regulations shall include any amendments or changes thereto.

G.   **Trust Irrevocable**.   This Trust shall be irrevocable.  Except for the limited power of modification vested in the Trustee pursuant to subparagraph BB in Article VIII, the Trust may not be amended.

H.   **Acquisition and Maintenance of Residential Real Estate**.

1.   The Trustee is authorized to acquire and maintain an interest in residential real estate which is suitable for occupancy by Margaret.  Any purchase of a fee simple or remainder interest in residential real estate shall be titled in the name of the Trust and shall be subject to the terms of Paragraph A.1 of Article IV.  In the event this Trust comes to own realty, the Trustee may permit Margaret's occupancy or use without charge in such manner as, in the opinion of the Trustee, best serves her needs, without the necessity of turning such property into cash or gaining an income therefrom.  The Trustee may also permit occupancy of such residential real estate by Margaret's family members or caregivers upon such terms as the Trustee determines.

2.   The Trustee is authorized to pay out of the income or principal of this Trust any taxes, insurance and maintenance expenses needed to keep any such specially equipped residential or replacement property, or any portion thereof, in suitable repair, and to collect rent from other occupants of the property, as the Trustee deems proper.  These powers may be exercised for the benefit of Margaret, even if she is residing with family member(s) who may also be serving as a Trustee.

IN WITNESS WHEREOF, the following parties have executed this Trust Agreement effective as of the date first written above.


_____   _____(SEAL)
Witness                                                      Michael Balliet, Sr., as Grantor and as Trustee


_____
Witness

_____(SEAL)
Michael Balliet, Jr., as Trustee

**TRUSTEE:**

**The Trust Company of Sterne Agee, Inc.**

By: _____

Its: _____

STATE OF ALABAMA          )
COUNTY OF _____  )

      I, the undersigned Notary Public, in and for the State of Alabama, County of _____, do hereby certify that Michael Balliet, Sr., whose name as Grantor and Trustee is signed to the above and foregoing instrument, and who is known to me, acknowledged before me on this day, that, being informed of the contents of said instrument, he executed the same voluntarily on the day the same bears date.

      Given under my hand and seal on this the _____ day of _____, 2010.


_____
Notary Public
My Commission Expires: _____

(SEAL)

STATE OF ALABAMA      )
COUNTY OF _____   )

     I, the undersigned Notary Public, in and for the State of Alabama, County of _____, do hereby certify that Michael Balliet, Jr., whose name as Trustee is signed to the above and foregoing instrument, and who is known to me, acknowledged before me on this day, that, being informed of the contents of said instrument, he executed the same voluntarily on the day the same bears date.

     Given under my hand and seal on this the _____ day of _____, 2010.


                      _____

                      Notary Public
                      My Commission Expires: _____

(SEAL)

STATE OF ALABAMA      )
COUNTY OF _____  )

     I, the undersigned Notary Public, in and for said State and County, do hereby certify that _____, whose name is signed to the above and foregoing instrument as _____ of **The Trust Company of Sterne Agee, Inc.**, and who is known to me, acknowledged before me on this day, that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

     Given under my hand and official seal of office on this the _____ day of _____, 2010.


                      _____

                      Notary Public
                      My Commission Expires: _____

(SEAL)

**EXHIBIT "A"**

**$5.00 from Grantor**

Proceeds ordered to be paid to this Trust on Margaret's behalf pursuant to Order of the United States District Court for the Northern District of Texas, Amarillo Division, entered on _____, 2010, in Civil Action No. 2:09-CV-136-J.

### EXHIBIT "B"

### DIVISION OF SHARES

<u>Special Needs Share</u>

$ _____

<u>Medicare Set Aside Share</u>

$57, 607.00, plus structured annuity payments of $9,137.89 annually
for 26 years from date of this Trust.